IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

VILLAGE GREEN I, GP,              )
A Nevada General Partnership,      )
                                   )
            Appellant,             )
                                   )
v.                                 )          No. 14-2351-STA-tmp
                                   )
FEDERAL NATIONAL MORTGAGE          )
ASSOCIATION,                       )
                                   )
            Appellee.              )

---

## OPINION

---

Appellant Village Green I, GP ("Village Green") appeals the decision of the United States Bankruptcy Court for the Western District of Tennessee to lift the automatic stay and dismiss Village Green's chapter 11 petition *sua sponte*. Although the parties have requested oral argument, the Court finds that oral argument would not assist the Court in reaching its decision. For the reasons set forth below, the decision of the Bankruptcy Court is **AFFIRMED**.

## BACKGROUND

### I. Factual Background

This is the third appeal in this matter from a decision of the United States Bankruptcy Court for the Western District of Tennessee. The Court has set out the factual and procedural background of the case in its previous opinions in *Federal National Mortgage Association v. Village Green I, GP*, 483 B.R. 807 (W.D. Tenn. 2012) ("*Village Green I*") and in *Federal National*

1

*Mortgage Association v. Village Green I, GP*, No. 13-2643-STA, 2014 WL 288974 (W.D. Tenn. Jan. 27, 2014) ("*Village Green II*"). A recitation of the full background of the case is appropriate here.

Village Green owns the Village Green Apartments located at 3450 Fescue Lane, Memphis, Tennessee ("the property"). The property is a 314-unit apartment complex situated in the Hickory Hill neighborhood of Memphis. Village Green purchased the property in December 2005 for $10,820,000.00. The note originally matured on October 1, 2013; however, the note was payable at a thirty-year amortization rate. The unpaid principal balance accrued interest at a rate of 5.98% per annum. Village Green paid principal and interest of $55,040.41 per month plus a monthly replacement reserve payment of $7,195.83 and an additional amount for the monthly escrow of taxes and insurance. Village Green owed Fannie Mae a total monthly payment of $85,471.85.

At closing, Village Green's equity holders provided $2,140,437.59 of capital along with $8,964,818.04 of assumed debt owed to Fannie Mae. At the time of the purchase, Village Green executed an Assumption and Release Agreement with the prior owner of the property whereby Village Green assumed all of the obligations of the prior owner as set forth in the Multifamily Note, as secured by the Multifamily Deed of Trust, Assignment of Rents and Security Agreement. Village Green further assumed the Replacement Reserve and Security Agreement, the Assignment of Management Agreement, the Operations and Maintenance Agreement, and the Completion Repair and Security Agreement.

Thereafter, Village Green executed a Master Lease with EP Village Green Operator, LLC ("EP Operator"), pursuant to which EP Operator collected all rent, paid all bills and remitted a basic rent to Village Green. Subsequent to the execution of the Master Lease, EP Operator retained Lexington Asset Management, LLC to manage the property.

Village Green began experiencing financial difficulties in 2009 at a time when the broader economy suffered a downturn and affected the United States at large. The poor economy resulted in a disproportionately high unemployment rate in the Memphis area, specifically among African-Americans who make up the majority of the tenants at the property. Village Green's tenants started to lose their jobs, resulting in failures to pay rent, evictions, and a high rate of tenant turnover at the property. Village Green concluded that under the circumstances, its losses at the property were beyond its control.

At that time Village Green approached the loan servicer seeking a modification of the financing for the property. The loan servicer indicated that Fannie Mae would not discuss modification of a loan so long as Village Green was current with its payments and that Village Green would need to miss a payment in order to be classified as "special servicing." Village Green did not make its December 2009 payment. Following Village Green's missed payment, Fannie Mae sent Village Green a "pre-negotiation" letter and requested certain documentation. Fannie Mae did not, however, engage in any dialog with Village Green or otherwise attempt a loan modification. Fannie Mae only stated the amount owed to bring the loan current and gave notice of its intent to conduct foreclosure proceedings. Fannie Mae also accused Village Green of

failing to maintain the property, though there was no evidence that Fannie Mae ever performed an inspection of the property.

## II. Procedural History

In due course Fannie Mae filed suit in the Chancery Court for Shelby County, Tennessee, seeking appointment of a receiver. When the Chancery Court denied Fannie Mae's request, Fannie Mae initiated foreclosure. Village Green filed its Chapter 11 case on April 16, 2010, to halt the foreclosure proceedings. Village Green made substantial pre-petition, post-default payments to Fannie Mae, consisting of the escrow for taxes and insurance, partial payment of the replacement reserve escrow, and partial payment of principal and interest. The Bankruptcy Court eventually confirmed Village Green's Fifth Amended Plan of Reorganization as modified by the Supplemental Amendment to its Fifth Amended Plan of Reorganization (hereinafter "the plan"). Village Green's plan classified Fannie Mae's secured claim in one class and provided for two separate classes of unsecured claims.

Class 2 consisted of Fannie Mae's secured claim in the stipulated amount of $5,400,000.00. The plan proposed to pay Fannie Mae deferred cash payments at an interest rate of 5.4% per annum in equal monthly installments for a term of one hundred and twenty (120) months. The monthly installments were calculated based on an amortization period of thirty years from the effective date of the plan. The plan anticipated a balloon payment obtained through refinancing at the conclusion of the ten-year repayment period.

Class 3 consisted of general unsecured claims which Village Green would pay in two equal installments. The first installment would be due thirty (30) days from the plan's effective date and the second installment sixty (60) days after the plan's effective date. The creditors making up Class 3 were Village Green's accountant with an unsecured claim of $742.50 and a former attorney for Village Green with an unsecured claim of $1,629.97.

Class 4 consisted of Fannie Mae's unsecured deficiency claim. Fannie Mae's unsecured deficiency claim was calculated as the difference between Fannie Mae's total allowed claim, which Village Green estimated to be $8,600,000.00, less the amount of Fannie Mae's allowed secured claim, which the parties stipulated to be $5,400,000.00 (i.e. the current value of the property) less payments made to Fannie Mae after the commencement of the bankruptcy proceedings. Village Green proposed, and the Bankruptcy Court confirmed, the following treatment of Fannie Mae's unsecured claim:

> Fannie Mae will receive deferred cash payments equal to the full amount of its Allowed unsecured deficiency claim at a market rate of interest of 5.4% per annum from and after the Effective Date. Commencing on or before the 10th of each month beginning after the Effective Date, Debtor will make monthly payments of $2,000 to Fannie Mae for twelve months.

> The monthly payment of $2,000 will be applied to the interest accruing on Fannie Mae's unsecured deficiency claim. After the initial twelve month period, Debtor will make full interest payments on Fannie Mae's Allowed unsecured deficiency claim. Payments to FNMA [sic] will continue for a total of one hundred and twenty (120) months after the Effective Date. The remaining balance due to Fannie Mae, including any accrued unpaid interest, will be paid in full upon the refinancing of the real property, otherwise known as Village Green Apartments, which Debtor believes will be obtainable on or before the expiration of the 120 month period.

In short, the Plan provided for a balloon payment of approximately $6.64 million at the conclusion of the ten-year repayment period for Fannie Mae's unsecured claim.

The plan further provided that Village Green would independently escrow funds allocated for the property taxes, insurance, and capital expenditures, as opposed to Fannie Mae impounding the funds. The plan required Village Green to provide a quarterly accounting of these funds and an operating report to Fannie Mae. The Bankruptcy Court overruled Fannie Mae's objections and confirmed the plan, holding that Village Green's plan satisfied the cramdown requirements of 11 U.S.C. § 1129(b). Fannie Mae appealed the Bankruptcy Court's decision to this Court.

In *Village Green I*, the Court largely affirmed the Bankruptcy Court's initial order confirming Village Green's Chapter 11 plan. The Court remanded the case for the limited consideration of the following issues: (1) whether artificial impairment is relevant to the analysis under 11 U.S.C. § 1129(a)(10) or the analysis under section 1129(a)(3); (2) whether Village Green had shown good cause for the impairment of the claims of its accountant and attorney; and (3) whether the plan's proposed modification of the loan documents was fair and equitable to Fannie Mae. On remand the Bankruptcy Court held that the issue of artificial impairment was relevant to its good faith analysis under section 1129(a)(3) and concluded that Village Green was economically justified in impairing the *de minimis* claims. The Bankruptcy Court further determined that certain modifications of the parties' loan documents were fair and equitable to Fannie Mae. Fannie Mae again appealed the Bankruptcy Court's decision.

In *Village Green II*, the Court affirmed in part and reversed in part the Bankruptcy Court's confirmation decision. The Court found an abuse of discretion in the Bankruptcy Court's holding

that Village Green had economic justification for impairing the *de minimis* claims of its attorney and accountant.  As such, Village Green had not shown that it had proposed its plan in good faith. As for the modifications to the Deed of Trust and specific covenants between the parties, the Court affirmed the Bankruptcy Court's determination that transfer of control over funds for taxes, insurance, and capital expenditures was fair and equitable to Fannie Mae.  However, the Court reversed the Bankruptcy Court's unsupported finding that the removal of Fannie Mae's right to consent to the management of the property was fair and equitable.  Therefore, the Court remanded the case a second time to the Bankruptcy Court for further proceedings.  On remand, the Bankruptcy Court granted Fannie Mae's motion to lift the automatic stay and *sua sponte* dismissed the case on April 24, 2014.  Village Green's timely appeal followed.[1]

## III.    Village Green's Arguments on Appeal

Village Green challenges the Bankruptcy Court's *sua sponte* dismissal of the case and its decision to lift the automatic stay.  Village Green argues that the Bankruptcy Court's final disposition of the case was the inevitable consequence of this Court's decisions in the previous appeals.  Or as Village Green explains in its opening brief, "although Village Green is technically appealing from the Bankruptcy Court's dismissal of its Bankruptcy case, the substance of Village Green's appeal is addressed to rulings made by this Court in *Village Green II*."[2]  According to

_____

[1] Village Green initially took its appeal to the Bankruptcy Appellate Panel for the Sixth Circuit.  Fannie Mae then exercised its right to have the appeal heard by this Court pursuant to 28 U.S.C. 158(c)(1)(B).

[2] Village Green's Opening Br. 4-5 (ECF No. 21) ("Due to the peculiar appellate arrangement under the Bankruptcy Code, Village Green must first ask this Court to correct the

Village Green, this Court wrongly decided the issues in the two earlier appeals, improperly set aside the Bankruptcy Court's confirmation of Village Green's plan, and remanded the case to the Bankruptcy Court with erroneous instructions. In this appeal Village Green asks the Court to correct its previous rulings and remand the case to the Bankruptcy Court with instructions to confirm Village Green's plan.

Village Green has raised three specific assignments of error in the Court's earlier rulings. First and foremost, Village Green argues that this Court erred by recognizing the doctrine of artificial impairment. The concept of artificial impairment is found nowhere in the Bankruptcy Code, and the Sixth Circuit has never adopted the judicially-made doctrine. Section 1129(a)(10) permits impairment of a class of claims without reference to the intent of the debtor or the debtor's economic needs. Artificial impairment is arguably inconsistent with the structure of the 1994 amendments to the Code. And even in the Circuits where courts have recognized the doctrine, courts differ over how to analyze the issue. For example, the Eighth Circuit in *In re Windsor on the River Assoc*. concluded that artificial impairment is properly considered under 11 U.S.C. § 1129(a)(10) and the determination of whether at least one impaired class of creditors consented to the debtor's plan. More recently, the Fifth Circuit joined the Ninth Circuit and held that artificial impairment is a question of the debtor's good faith in proposing the plan under 11 U.S.C. § 1129(a)(3). According to Village Green, the Fifth Circuit further held that the debtor's intent in impairing a claim is irrelevant. Village Green argues that the Fifth Circuit's approach supports

_____

rulings which Village Green believes are erroneous under the applicable law and the facts in this record.").

8

the Bankruptcy Court's initial decision to confirm Village Green's plan and that the Court should follow the Fifth Circuit case. In sum, Village Green contends that this Court mistakenly concluded that Village Green had artificially impaired the claims of its consenting class of creditors.

Village Green devotes comparatively less attention to the remaining issues in its appeal. In its second assignment of error, Village Green asserts that the Court wrongly decided in *Village Green II* that Village Green's plan improperly shifted the risk of reorganization to Fannie Mae. The Court overlooked the Bankruptcy Court's factual findings about the parties' acrimonious relationship and its conclusion that modification of the loan documents would increase the chances of a successful reorganization. And in its third and final assignment of error, Village Green argues the Bankruptcy Court erred in lifting the automatic stay. The Bankruptcy Court wrongly determined that there was no longer a reorganization "in prospect" and that the property was therefore not necessary for an effective reorganization. Village Green posits that "if the court's conclusions with regard to artificial impairment are incorrect [and this Court remands the case], then the prospect of reorganization exists, and the property is essential . . . ."[3] Therefore, the Court should reverse its earlier rulings on the artificial impairment issue and remand to the Bankruptcy Court with instructions to confirm Village Green's plan.

## IV.    Fannie Mae's Response

---

[3] Village Green's Opening Br. 25.

In its response, Fannie Mae first argues that Village Green's artificial impairment argument is irrelevant. Fannie Mae points out that in *Village Green I* this Court concluded that the doctrine of artificial impairment continued to be good at law even after the 1994 amendments to the Code and reversed the Bankruptcy Court's conclusion to the contrary. The Court instructed the Bankruptcy Court to determine on remand whether artificial impairment was relevant to its cramdown analysis under § 1129(a)(10) or § 1129(a)(3). The Court further instructed the Bankruptcy Court to determine whether Village Green had shown economic justification for impairing the claims of its attorney and accountant. On remand the Bankruptcy Court held that artificial impairment was relevant to the good faith issue under § 1129(a)(3) and did not run afoul of § 1129(a)(10), a ruling Fannie Mae never challenged in its second appeal. As such, this Court never relied on the Eighth Circuit's decision in *Windsor*, much less adopted the ruling to guide its analysis of Village Green's plan. The Fifth Circuit's decision in *Camp Bowie* is consistent with the Bankruptcy Court's decision that artificial impairment is a question of good faith under § 1129(a)(3). As a result, the circuit split on artificial impairment is simply not relevant to this appeal.

Fannie Mae argues that Village Green's remaining assignments of error are likewise without merit. With respect to the Court's analysis of the fairness and equity of Village Green's plan, *Village Green II* actually affirmed the Bankruptcy Court's decision to grant Village Green greater control over escrowed funds for taxes, insurance, and capital expenditures. The Court found an abuse of discretion only where the Bankruptcy Court failed to address the fairness of modifying Fannie Mae's contractual right to consent to the property manager. On remand the

Bankruptcy Court never returned to the issue before dismissing the case *sua sponte*. Instead the Bankruptcy Court dismissed the case in light of *Village Green II*'s conclusion that Village Green had not proposed the plan in good faith. Therefore, the Court's ruling on the fairness and equity of the plan was not relevant to the Bankruptcy Court's decision to dismiss the case *sua sponte*.

Finally, Fannie Mae argues the Bankruptcy Court did not err in granting relief from the automatic stay. Village Green failed to carry its burden to show that the property was essential to reorganization and that reorganization was in prospect. The Bankruptcy Court aptly recognized that Village Green could not confirm the plan because it had not proposed its plan in good faith. Under the circumstances, reorganization was no longer in prospect. Fannie Mae argues then that the Bankruptcy Court did not abuse its discretion in lifting the automatic stay. Therefore, the Court should affirm the decision of the Bankruptcy Court to dismiss the case *sua sponte* and lift the automatic stay.

## V.      Village Green's Reply

In its reply brief, Village Green answers that the prospects of reorganization depend on the outcome of this appeal. If the Court reverses its previous rulings, the plan is likely to be confirmed, and reorganization remains in prospect. As such, the Bankruptcy Court should not have lifted the automatic stay. With respect to the artificial impairment issue, Village Green continues to argue that the doctrine is no longer good at law following the 1994 amendments to the Code. Or as Village Green summarizes: "There is no such thing as artificial impairment. There is

simply impairment."[4]   Village Green also restates its arguments about the fairness and equity of the plan and its modifications of the parties' contractual rights.   Village Green concedes that the Court affirmed the Bankruptcy Court on the fairness and equity of the plan shifting control over escrowed funds.   Village Green continues to argue that the plan's modification of Fannie Mae's right to approve the property manager was fair and equitable, though neither this Court nor the Bankruptcy Court ever reached the merits of that issue.   Village Green reiterates its plea that the Court reverse its previous ruling on artificial impairment, set aside the Bankruptcy Court's *sua sponte* dismissal of the case and order lifting the automatic stay, and remand the case with instructions to confirm the plan.

## JURISDICTION

The Court has jurisdiction over Village Green's appeal in this matter pursuant to 28 U.S.C. § 158(a)(1).   That section grants district courts jurisdiction over final orders from a bankruptcy court.   The Bankruptcy Court dismissed this case pursuant to 11 U.S.C. § 1112(b), and the Bankruptcy Appellate Panel for the Sixth Circuit has held that a dismissal under that section is a final appealable order for purposes of section 158.[5]   It is true that Village Green's appeal is in substance a challenge to the Court's previous decisions in *Village Green I* and *II*, in which the Court reversed the Bankruptcy Court's confirmation orders and remanded for further proceedings. However, the Sixth Circuit has held that a district court's order "rejecting a confirmation plan is

---

[4] Village Green's Reply Br. 4 (ECF No. 34).

[5] *In re Meridian Venture Partners, LLC*, 507 B.R. 31 (B.A.P. 6th Cir. 2013).

not a final order appealable under 28 U.S.C. 158(d)(1)."[6]  Based on this authority, the Court's

decisions in *Village Green I* and *II* were not final appealable orders because the Court in each

instance rejected Village Green's confirmation plan and remanded the case to the Bankruptcy

Court.   Therefore, the Court holds that jurisdiction is proper in this appeal.

## STANDARD OF REVIEW

The standard of review for bankruptcy appeals is clearly erroneous for the Bankruptcy

Court's factual findings and *de novo* for its conclusions of law.[7]  "Clear error occurs only when

[the Court is] left with the definite and firm conviction that a mistake has been committed.   If

there are two permissible views of the evidence, the factfinder's choice between them cannot be

clearly erroneous."[8]  If the Bankruptcy Court's conclusion raises a mixed question of law and fact,

the district court "must break the question into its constituent parts and apply the appropriate

standard of review for each."[9]

## ANALYSIS

## I. Artificial Impairment

---

[6] *In re Lindsey*, 726 F.3d 857, 859 (6th Cir. 2013).

[7] *Class Five Nev. Claimants v. Dow Corning Corp., (In re Dow Corning Corp.)*, 280 F.3d 648, 656 (6th Cir. 2002).

[8] *Mitan v. Duval (In re Mitan)*, 573 F.3d 237, 241 (6th Cir. 2009) (quotation omitted); Fed. R. Bankr. P. 8013.

[9] *Bank of Montreal v. Official Comm. of Unsecured Creditor* (*In re Am. HomePatient, Inc.*), 420 F.3d 559, 563 (6th Cir. 2005) (quotation omitted).

The primary issue presented in this appeal is the doctrine of artificial impairment. The Bankruptcy Court declined to recognize artificial impairment based on the 1994 amendments to the Code. In *Village Green I*, this Court collected decisions from a number of courts holding that artificial impairment continued to violate Chapter 11's cramdown procedure, even after the 1994 amendments to the Code, and reversed. Village Green now returns to the issue, asking the Court to reject the doctrine of artificial impairment outright, just as the Bankruptcy Court did in its original confirmation decision.[10] Village Green makes two related points based largely on arguments the Court already considered in *Village Green I*.

## A. Artificial Impairment and the Statutory Text of the Code

First, Village Green argues that the concept of artificial impairment has no support in the text of the Bankruptcy Code itself. None of the code sections concerning impairment refer to "artificial impairment" or require a debtor to show justification for impairing a claim or interest. Section 1123(b)(1) grants a debtor discretion in choosing whether to impair a claim or interest, section 1124(1) broadly defines impairment of a claim or interest, and section 1129(a)(10) requires that one class of impaired claims vote to accept a plan in order to satisfy the cramdown requirements under Chapter 11. Village Green argues then that as a matter of statutory

_____

[10] The Court would highlight that Village Green does not challenge the Bankruptcy Court's ruling that impairment without justification was relevant to the good faith inquiry under § 1129(a)(3) or this Court's conclusion that Village Green had not shown economic justification for impairing the claims of its attorney and accountant. The Court further discusses those holdings below. Village Green's argument in this appeal is confined to its theory that the doctrine of artificial impairment is simply no longer good at law.

construction, "[t]here is no such thing as artificial impairment. There is simply impairment."[11] What is more, Village Green contends that its plan satisfied each of these statutory requirements governing impairment: "Class 3 is impaired. Class 3 accepted the Plan. The Bankruptcy Court correctly concluded that Section 1129(a)(10) was met."[12] Therefore, the Court should not recognize a legal doctrine which is not spelled out in the Code.

The Court finds Village Green's argument from the statutory text to be unpersuasive. As Village Green correctly argues, "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."[13] However, the Court need not construe the code sections discussed in Village Green's opening brief (§ 1123(b)(1), § 1124(1), and § 1129(a)(10)) in order to make a determination of the artificial impairment issue, as Village Green frames it in this appeal. The issue presented is not whether Village Green's plan complied with the Code's statutory requirements for impairing the claims of its attorney and accountant. There is no dispute that the plan did. In its initial confirmation order, the Bankruptcy Court held that the *de minimis* claims were impaired, and *Village Green I* affirmed this holding.[14] As this Court explained in *Village Green I*, "the issue presented is not whether the claims were impaired, as the Code defines the term, but whether

---

[11] Village Green's Reply Br. 4.

[12] Village Green's Opening Br. 13.

[13] *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004).

[14] *Village Green I*, 483 B.R. 807, 817 (W.D. Tenn. 2012) ("The Bankruptcy Court correctly held that the *de minimis* claims were impaired.").

Village Green impaired the claims without justification."[15]   At this stage of the proceedings then, Village Green's argument about the Code's definition of impairment and the proper construction of the statutory text is not actually contested.   For this reason alone, the Court holds that Village Green has not shown why its proposed construction of the code sections on impairment would alter the outcome of the appeal.[16]

Perhaps more importantly, Village Green's statutory argument largely fails to address § 1129(a)(3) or respond to the Court's rulings concerning artificial impairment as a consideration in the good faith inquiry of § 1129(a)(3).   On remand from *Village Green I*, the Bankruptcy Court held that that issue of impairment without justification went to Village Green's good faith in proposing the plan under § 1129(a)(3), and not the issue of claim impairment under § 1129(a)(10). In *Village Green II*, neither party challenged the Bankruptcy Court's legal conclusion that impairment without justification was an element of good faith under § 1129(a)(3), and the Court finds no error in the Bankruptcy Court's holding.[17]   This Court went on to find in *Village Green II*

---

[15]  *Id.*

[16]  In its opening brief, Village Green claims, "The artificial impairment argument cannot be shoe-horned into the 'fair and equitable' standard of Section 1129(b)."   Village Green's Opening Br. 9.   The Court finds that whatever its merits may be, this contention is irrelevant. This Court has never held that artificial impairment has any bearing on the fair-and-equitable inquiry under § 1129(b).   Village Green raises the issue for the first time in this appeal.   Under the circumstances, the Court declines to address the argument further.

[17]  Fannie Mae did not seek review of the Bankruptcy Court's holding, and consequently, this Court never reviewed the Bankruptcy Court's conclusion.   As a procedural matter, the Bankruptcy Court's ruling arguably constitutes the law of the case. *In re SII Liquidation Co.*, 517 B.R. 72, 75 (B.A.P. 6th Cir. 2014).   Because the Court finds no error in the Bankruptcy Court's decision to assess the justification for the plan's impairment of the *de minimis* claims as an element of good faith, the Court need not decide whether the law of the case doctrine applies.

that Village Green had not shown justification for impairing the *de minimis* claims. Village Green has not raised either of these rulings as assignments of error in this appeal or addressed the Court's construction of § 1129(a)(3). In fact, the full extent of Village Green's discussion of the good faith issue is as follows: "Congress made the cram down available to debtors; use of it to carry out a reorganization cannot be bad faith,"[18] and that "[a]ny 'artificial' impairment of Class 3 does not compel a determination that the Plan was not proposed in good faith in violation of Section 1129(a)(3)."[19] Village Green cites no authority to support its passing remarks on § 1129(a)(3) and fails to discuss any of the cases reaching the opposite result.

Not only has Village Green neglected to address the good faith issue more fully, Village Green relies heavily on case law, which actually tends to support the Court's holding (and undermine Village Green's cursory argument) about § 1129(a)(3) and the good faith issue. In its opening brief, Village Green invites the Court to "follow *Villages of Camp Bowie* and confirm the Plan."[20] The Fifth Circuit in *Camp Bowie* held that artificial impairment did not implicate § 1129(a)(10) or the requirement that one class of impaired creditors accept the plan. Nevertheless, the Fifth Circuit went on to hold that "though we reject the concept of artificial impairment as developed in *Windsor*, we do not suggest that a debtor's methods for achieving literal compliance with § 1129(a)(10) enjoy a free pass from scrutiny under § 1129(a)(3)." Recognizing that the

---

[18] Village Green's Opening Br. 22.

[19] *Id.* at 9 ("Indeed, it would be a strange world if a plan that provides for a 100% recovery to all creditors over a reasonable period of time and that preserves value for equity is deemed to have not been proposed in good faith.").

[20] *Id.* at 6.

Ninth Circuit had "left open the possibility that discretionary impairment could offend a plan proponent's duty of good faith under § 1129(a)(3),"[21] the Fifth Circuit concluded that "a plan proponent's motives and methods for achieving compliance with the voting requirement of § 1129(a)(10) must be scrutinized, if at all, under the rubric of § 1129(a)(3)."[22] The Court finds *Camp Bowie* to be consistent with the Bankruptcy Court's holding that economic justification was relevant to Village Green's good faith under § 1129(a)(3) and this Court's ruling that Village Green had to demonstrate some economic justification for impairing the claims of its *de minimis* creditors. As such, *Camp Bowie* actually cuts against Village Green's position. For all of these reasons, Village Green's textual argument does not alter the Court's legal analysis of the plan.

## B. *Windsor* and Impairment Under Section 1129(a)(10)

In a second related point concerning artificial impairment, Village Green argues that under 11 U.S.C. § 1129(a)(10), a plan proponent may impair a claim without any "reason or financial necessity," and as such, artificial impairment does not implicate § 1129(a)(10). Village Green makes much of the Eighth Circuit's decision in *Windsor*, holding that artificial impairment is not

---

[21] *Id.* (citing *L & J Anaheim Assoc. v. Kawasaki Leasing Int'l, Inc. (In re L & J Anaheim Assocs.)*, 995 F.2d 940, 942 (9th Cir. 1993)).

[22] *W. Real Estate Equities, L.L.C. v. Village at Camp Bowie I, L.P. (In re Camp Bowie)*, 710 F.3d 239, 247 (5th Cir. 2013). In its opening brief, Village Green states that "the Fifth Circuit in *Camp Bowie* held that a court does not reach the question of intent if the claims are properly classified and that a debtor cannot be required to pay all claims in cash." Village Green's Opening Br. 7. Because the Fifth Circuit went to hold that a plan proponent's justifications should be considered under § 1129(a)(3), the Court finds that Village Green's characterization of *Camp Bowie* is incomplete.

permitted under section 1129(a)(10), and the subsequent circuit split over *Windsor*.[23]  As the Court explained in *Village Green I*, the Eighth Circuit concluded in *Windsor* that artificial impairment undermined the policy of consensual reorganization and was prohibited under 11 U.S.C. § 1129(a)(10).   Other courts, most notably the Ninth Circuit, have declined to follow *Windsor* and instead reasoned that artificial impairment went to the good faith of the plan proponent for purposes of § 1129(a)(3).   More recently, the Fifth Circuit joined the Ninth Circuit in rejecting *Windsor* and held that "§ 1129(a)(10) does not distinguish between discretionary and economically driven impairment."[24]   Village Green argues that no other Circuit has followed *Windsor*.

The Court holds that the Eighth Circuit's analysis of artificial impairment under § 1129(a)(10) and the circuit split over *Windsor* are largely irrelevant in this appeal.   In point of fact, neither this Court nor the Bankruptcy Court adopted *Windsor*'s rule or reasoning in assessing the merits of Village Green's plan.   In *Village Green I*, this Court did not take a position on the circuit split over *Windsor* but remanded the case to the Bankruptcy Court to decide the question in the first instance.   On remand the Bankruptcy Court held that artificial impairment "would not run

---

[23] Village Green argues that *Windsor* suffers from a number of problems.   The Eighth Circuit wrongly decided the case as a matter of statutory construction; the decision is "no longer good law" in light of the 1994 amendments to the Code; and the case's legal reasoning has never been adopted by any other Circuit Court of Appeals, including the Sixth Circuit.   For the reasons set forth in this opinion, the Court finds that Village Green's criticisms of *Windsor*, regardless of their merits, do not lead the Court to reconsider its previous rulings on the question of artificial impairment.

[24] *In re Camp Bowie*, 710 F.3d at 247.

afoul of § 1129(a)(10)." [25] In other words, the Bankruptcy Court sided with the Ninth Circuit, rejected the Eighth Circuit's approach in *Windsor*, and adopted the same position Village Green now argues on appeal. The Fifth Circuit's subsequent decision in *Camp Bowie* only lends additional support to the Bankruptcy Court's determination of the issue. Therefore, the Court finds that *Windsor*'s treatment of artificial impairment under § 1129(a)(10) has no effect on this appeal.

For largely the same reasons, the Court remains unconvinced of Village Green's argument concerning the 1994 amendments to the Code. Prior to 1994, a plan did not impair a claim or interest for purposes of § 1124 so long as the plan proposed to pay the claim in full on the effective date of the plan. Twenty years ago, Congress amended 11 U.S.C. § 1124(3) in order to eliminate this so-called "cash-out" provision. Village Green asserts that the elimination of the cash-out provision had the effect of "broadening [] the definition of impairment" and arguably undermined the rule in *Windsor* that artificial impairment and the debtor's "motives in creating the impaired class" implicate § 1129(a)(10).[26] But as previously discussed, the Court actually held that the plan impaired the *de minimis* claims and satisfied the requirements for impairment under the Code. No dispute about this ruling exists at this stage of the proceedings. Furthermore, the Bankruptcy Court held that whether the plan impaired the claims without justification was a matter of good faith under § 1129(a)(3), and not a question of impairment under § 1129(a)(10). As a result,

---

[25] *Village Green II*, No. 13-2643-STA, 2014 WL 288974, at *1 (W.D. Tenn. Jan. 27, 2014).

[26] Village Green's Opening Br. 17.

Village Green has not persuaded the Court that the 1994 amendments to § 1124 have any bearing on the issue of whether the plan impaired the *de minimis* claims without justification.

Village Green also argues that artificial impairment essentially results in "single asset real estate cases [being] judged by a different standard than any other business Chapter 11 case."[27] The Court must emphasize that nothing in its rulings here should be construed to mean that the doctrine of artificial impairment categorically bars a Chapter 11 cramdown in all single-asset real estate cases. This Court has never ruled that artificial impairment compelled a determination in this case, one way or the other, about Village Green's good faith in proposing the plan. The Court held in *Village Green I* that "Village Green must demonstrate some economic justification for delaying payment to the *de minimis* creditors."[28] And the Court found in *Village Green II* that "[t]he great weight of the evidence showed that Village Green had no economic justification for failing to pay out $2,400 in claims to its accountant and attorney."[29] The Court's finding on the good faith issue was based on the totality of the circumstances specific to this case, and not a generalized rule for single-asset real estate cases. One of the specific factors in this case was Village Green's "net net lease" with its property manager. This feature of Village Green's business model, and not the fact that Village Green is single-asset real estate debtor, arguably

---

[27] *Id.* at 5; *see also id.* at 8 ("In effect, [Fannie Mae]'s position is that because the unsecured claims in single asset real estate cases are typically small in comparison to the secured claim that the unsecured claims must be disenfranchised from the confirmation process if at all possible.").

[28] *Village Green I*, 483 B.R. at 818.

[29] *Village Green II*, 2014 WL 288974, at *3. As previously noted, Village Green has not appealed this ruling or argued that it could show justification for impairing the *de minimis* claims.

resulted in Village Green having very few creditors other than its mortgage lender. In short, the Court does not agree that the doctrine of artificial impairment operates decisively to block reorganization in Chapter 11 cases involving a single real estate asset. Thus, the Court finds Village Green's alarm about the effect of artificial impairment on single-asset real estate concerns to be overstated.

Having concluded that Village Green has not shown why the Court should set aside its earlier rulings on the issue of artificial impairment, the Court finds no error in the Bankruptcy Court's *sua sponte* dismissal of the case. Therefore, the Bankruptcy Court's order of dismissal is **AFFIRMED** on this point.

## II. Risk of Reorganization

In its second assignment of error, Village Green challenges the Court's ruling in *Village Green II* concerning the modification of the parties' existing agreements. According to Village Green, the Court "erroneously concluded that the modification of the loan documents shifted the risk of reorganization to [Fannie Mae]."[30] And the Court's erroneous conclusion about the risk of reorganization compelled the Bankruptcy Court on remand to dismiss the case *sua sponte*. The Court finds this argument to be without merit. Village Green has actually misstated the Court's holding on the fairness and equity of the modification to the parties' existing agreements.

---

[30] Village Green's Opening Br. 23.

In *Village Green II*, the Court affirmed the Bankruptcy Court's fair-and-equitable analysis in nearly all respects. The Court found an abuse of discretion only in the Bankruptcy Court's unsupported finding that the removal of Fannie Mae's right to consent to the management of the property was fair and equitable. The Court simply noted that the "Bankruptcy Court did not specifically make an equitable determination about those modifications or even findings to support [its fair-and-equitable] determination."[31] The Bankruptcy Court made no "findings to establish how Fannie Mae had perhaps interfered in management decisions at the property in the past or how the plan's modifications to the parties' contracts would prevent such interference in the future."[32] As such, the Court reversed the Bankruptcy Court's determination but only as to the modification of Fannie Mae's right to consent to the property manager. The Court never reached the actual merits of the modification, much less hold that the modification unfairly shifted the risk of reorganization to Fannie Mae. On remand the Bankruptcy Court never returned to the issue and instead dismissed the case *sua sponte*.

On appeal Village Green returns to the modification of the parties' contract to eliminate Fannie Mae's right to approve the property manager and asks the Court to reconsider its conclusion from *Village Green II*. Village Green contends that the Bankruptcy Court did make findings to support its equitable determination, just not in the course of analyzing the fair-and-equitable standard under § 1129(b). The Bankruptcy Court held that the plan was

---

[31] *Village Green II*, 2014 WL 288974, at *9.

[32] *Id.*

feasible for purposes of § 1129(a)(11) due in part to the increase in the occupancy rate at the apartments under the current management company.[33]  Village Green argues then that this additional finding supported the Bankruptcy Court's separate conclusion about the equities of reforming the parties' contract to give Village Green more autonomy in selecting a property manager.  The Court disagrees.  The Bankruptcy Court's finding that the current property manager had improved occupancy and thereby increased the likelihood of successful reorganization does not tend to show that it was fair to Fannie Mae to alter its contractual right to approve the property manager.  Village Green's argument proceeds as follows: Fannie Mae approved the property manager; the property manager was performing so well that the reorganization was likely to succeed; and yet it was fair, and even necessary to ensure the success of the reorganization, for Fannie Mae to lose its right to approve the property manager in the future.  The Court finds this chain of reasoning to be unconvincing.  Therefore, the Court finds no error in its previous ruling, and the Bankruptcy Court's dismissal of the case is **AFFIRMED** on this point.

### III. Lifting the Automatic Stay

In its third and final assignment of error, Village Green argues that the Bankruptcy Court erred by lifting the automatic stay.  Village Green concedes that "[t]he question of relief from the

---

[33] A bankruptcy court must consider the feasibility of the proposed plan and must confirm the plan only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  11 U.S.C. § 1129(a)(11).

automatic stay rises or falls on the possibility of a plan of reorganization."[34]   Reorganization would remain possible in the event Village Green prevails in this appeal.   Viewed from this perspective, the Bankruptcy Court incorrectly held that reorganization was no longer in prospect.

Pursuant to 11 U.S.C. § 362(d), a court "shall grant relief from the stay with respect to a stay of an act against property . . . if the debtor does not have an equity in such property; and such property is not necessary to an effective reorganization."[35]   The United States Supreme Court has held that property is necessary for an effective reorganization when the reorganization is "in prospect," meaning "that there must be a reasonable possibility of a successful reorganization within a reasonable time."[36]   The Court finds no error in the Bankruptcy Court's decision to lift the automatic stay.   Village Green filed its bankruptcy petition in April 2010, and the Bankruptcy Court finally dismissed the case in 2014.   Village Green has cited no case law to support its contention that reorganization remains "in prospect" so long after the initial filing of a petition but as long as the debtor has the right to appellate review of a bankruptcy decision.   Therefore, the Bankruptcy Court's order lifting the automatic stay is **AFFIRMED**.

## CONCLUSION

---

[34] Village Green's Opening Br. 25.

[35] 11 U.S.C. § 362(d).

[36] *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376 (1988).

The Court finds no error in its previous rulings, decisions which form the basis for Village Green's appeal of the Bankruptcy Court's *sua sponte* dismissal of the case and decision to lift the automatic stay.   Therefore, the Bankruptcy Court's orders are **AFFIRMED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:   December 1, 2014.